

# IN THE
# TENTH COURT OF APPEALS

### No. 10-17-00161-CR

**ADRIAN VALADEZ,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 19th District Court**
**McLennan County, Texas**
**Trial Court No. 2012-2160-C1**

## MEMORANDUM OPINION

In twenty-seven issues, appellant, Adrian Valadez, challenges his conviction for

unlawful possession of a controlled substance, marihuana, a third-degree felony. *See* TEX.

HEALTH & SAFETY CODE ANN. § 481.121(b)(4) (West 2017). Because we overrule all of

Valadez's issues, we affirm the judgment of the trial court.

# I.    SUFFICIENCY OF THE EVIDENCE

In his first issue, Valadez contends that the evidence is insufficient to link him to the contraband. We disagree.

## A.    Applicable Law

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey*

*v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

To prove unlawful possession of a controlled substance, the State was required to prove beyond a reasonable doubt that: (1) Valadez exercised control, management, or care over the substance; and (2) he knew that the matter possessed was contraband. *See Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the whole of the so-called 'affirmative links' rule." *Poindexter*, 153 S.W.3d at 405-06. This rule is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. *Id.* at 406. Mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans v. State*, 202 S.W.3d

158, 162 (Tex. Crim. App. 2006). However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., links), may be sufficient to establish that element beyond a reasonable doubt. *Id.* Evidence which links the defendant to the controlled substance suffices for proof that he possessed it knowingly. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

Texas courts have considered the following non-exclusive list of factors in determining a link between the accused and contraband: (1) the contraband was in plain view; (2) the accused owned the premises or had the right to possess the place where the contraband was found; (3) the accused had a large amount of cash when found; (4) the accused's access to the contraband; (5) the accused's close proximity to the contraband; (6) there was a strong residual odor of the contraband; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was present on the accused or in plain view; (9) the accused was under the influence of narcotics when arrested; (10) the accused's conduct indicated a consciousness of guilt; (11) the accused attempted to escape or flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) conflicting statements about relevant matters were made by the occupants; (15) the accused made incriminating statements connecting himself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances. *See Lopez v. State*, 267 S.W.3d 85, 92 (Tex. App.—Corpus Christi 2008, no pet.) (citing *Lassaint v. State*, 79 S.W.3d

736, 740-41 (Tex. App.—Corpus Christi 2002, no pet.); *see also Alexander v. State*, No. 10-12-00224-CR, 2013 Tex. App. LEXIS 9918, at **9-10 (Tex. App.—Waco Aug. 8, 2013, pet. ref'd) (mem. op., not designated for publication). It is not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162.

## B.    Discussion

Juan Rodriguez, a trooper with the Texas Department of Public Safety, testified that he pulled over a Cadillac that was traveling northbound on Interstate 35 for a window-tint violation. Trooper Rodriguez, who has significant experience running drug interdiction for the Department, recalled that when he approached the vehicle he could already smell marihuana "on a scale of one to ten, I could probably smell it like a five to six." The strength of the marihuana smell was "a little bit stronger—probably to about a seven or eight" when he reached the opened passenger-side window. While speaking to the driver, Jose Aguillon, Trooper Rodriguez noticed two other passengers in the vehicle. The back-seat passenger was later identified as Valadez.

Trooper Rodriguez testified that Aguillon displayed numerous signs of nervousness during this interaction. The front-seat passenger, Johnny Penaloza, was then taken out of the car. Penaloza had marihuana shake[1] on his shorts, which he denied

---

[1] Trooper Rodriguez described "shake" as "little remnants of marijuana. . . . Just a bunch of small, little crumbs . . . ."

was marihuana and attempted to claim was "linen." While Trooper Rodriguez and DPS Trooper Steven Royal spoke with Aguillon and Penaloza, Valadez remained in the back seat of the vehicle due to officer-safety concerns.

When he was removed from the back seat of the vehicle, Valadez pretended that he had been asleep and did what Trooper Rodriguez referred to as "the felony stretch." According to Trooper Rodriguez,

> [w]hen the body is nervous or any type of sort, the body has to expel the nervousness somehow, so he did the felony stretch and he acted like he was asleep, and he has been in the vehicle 10 minutes when I'm waiting for my cover unit, 10 to 12 minutes, and he's acting asleep, and that, to us, is like, he couldn't look me straight in the face and give me a straight answer, so he's showing deception towards me.
>
> . . . .
>
> I mean, he did a stretch where the body is expelling the nervousness, and the body does things where, when you're reading the body, if you're nervous, your face is going to start twitching, you're going to start pacing back and forth, you're going to start doing things with your hands that you don't even know that you're doing, you're going to start reaching for stuff, running your fingers through your hair. Little stuff like that is what we look at. Now, it might not mean nothing, but the totality of the circumstances, we put them all together, and then that's when we start putting everything together in like a timeline, a story, and that's where we go from.

When Trooper Rodriguez asked Valadez where they were going, Valadez responded, "I don't know. I'm along for the ride." Valadez also volunteered that he was "just coming to see girls," though none of the vehicle's occupants could provide names of the girls they

were allegedly coming to see. Valadez exhibited many of the same signs of nervousness and deception that Aguillon and Penaloza did.

Trooper Rodriguez later explained that drug runners rehearse a cover story, but once specific questions were asked, the suspects could not provide details. He also noted that drug runners are,

> like a trucking company. If the car ain't moving, they are not making money. It's a hurry up and go, get to the point, drop off, go back, load back up, and go. And they tend to have two or more drivers. That way the vehicle never stops and they can continue. If one gets tried, the other one can jump and drive.

A search of the vehicle yielded marihuana shake in the front seat area, along with two lighters. Additionally, there were marihuana "blunts" in the ashtray, and packages of cigarillos used for making "blunts" under the front seat. Aguillon denied that anyone had smoked in the car in the past week. Moreover, there was a cell phone in the console of the vehicle that was continuously ringing during the traffic stop.

When Trooper Rodriguez searched the back seat of the vehicle, he recalled that the odor of marihuana was about a seven or eight on a scale of ten. While searching the back seat, Trooper Rodriguez discovered an armrest in the middle of the back seat that had a hard, plastic utility door leading to the trunk. When Trooper Rodriguez opened the utility door, the odor of marihuana was overpowering. He assessed the marihuana odor as a ten on a scale of ten.

Next, Trooper Rodriguez searched the trunk and found two duffel bags containing bundles of marihuana. There were some dirty clothes on top of the bundles that "were just thrown in there, like it was a rush trip, and they needed something to cover up the bundles . . . ." After discovering the bundles, all three suspects were detained. All three suspects denied knowledge of the duffel bags; however, none of them appeared surprised. None of the suspects asked any questions, but, according to Trooper Rodriguez, seemed resigned to the situation. A subsequent inventory search conducted at the DPS office yielded additional bundles of marihuana in the spare-tire well. The total weight of all of the marihuana seized was 18.15 pounds.

As shown above, the evidence adduced at trial provided a number of links between Valadez and the contraband. First, the odor of fresh marihuana was overpowering in the back seat where Valadez was sitting. In fact, the smell emanated from a utility door leading to the trunk where Valadez had the most immediate access of any of the three co-defendants. Additionally, Valadez was nervous and evasive during the stop. He engaged in "the felony stretch" and was unable to provide details regarding where they were going and who they were going to see. Specifically, Valadez stated he was "along for the ride" and that he wanted to meet girls, but he did not know where they were going or any of the names of the girls they were going to meet. Trooper Rodriguez's testimony that Valadez relaxed and did not act surprised once the marihuana bundles were found also indicates a consciousness of guilt. And finally, the

State introduced extraneous-offense evidence to rebut Valadez's defensive theory that showed Valadez's long history of involvement with marihuana and drug dealing.

Viewing the evidence in the light most favorable to the verdict, and based on the logical force of all the circumstantial and direct evidence, we do not believe that the evidence demonstrates that Valadez's contact with the marihuana in this case was merely fortuitous. *See Poindexter*, 153 S.W.3d at 405-06; *Evans*, 202 S.W.3d at 162; *Lopez*, 267 S.W.3d at 92; *see also Jackson*, 443 U.S. at 319, 99. S. Ct. at 2789; *Zuniga*, 551 S.W.3d at 732-33. Therefore, applying the appropriate standards of review, we conclude that a reasonable factfinder could determine, beyond a reasonable doubt, that Valadez is guilty of the charged offense. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121; *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Zuniga*, 551 S.W.3d at 732-33. As such, we hold that the evidence is sufficient to support Valadez's conviction. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Zuniga*, 551 S.W.3d at 732-33. We overrule Valadez's first issue.

## II.     VOIR DIRE

In his second and third issues, Valadez argues that the trial court abused its discretion by refusing to allow defense counsel to ask two questions relative to the State's burden of proof during voir-dire examination of the prospective jurors. Specifically, Valadez contends that he was improperly denied the opportunity to ask jurors about: (1) how and why innocent people wound up convicted and how different standards of proof

apply to arrest, indictment, and trial; and (2) the verdict when the juror believed the defendant "probably did it," but did not know for sure.

## A. Standard of Review & Applicable Law

The trial court has broad discretion over the process of selecting a jury. *Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003). We leave to the trial court's discretion the propriety of a particular question and will not disturb the trial court's decision absent an abuse of discretion. *Id.* A trial court abuses its discretion when it prohibits a proper question about a proper area of inquiry. *Id.*

A question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Id.* An otherwise proper question is impermissible if it attempts to commit the juror to a particular verdict based on particular facts. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). Additionally, a voir-dire question that is so vague or broad in nature as to constitute a global fishing expedition is not proper and may be prevented by the trial judge. *Id.* at 39.

> One way a question can be relevant is if it seeks to uncover grounds for a challenge for cause. A veniremember may be challenged for cause if: (1) he possesses a bias or prejudice in favor of or against the defendant . . . ; (2) he possesses a bias against a phase of the law upon which the State or the defendant is entitled to rely . . . ; or (3) he has already decided the defendant's guilt or punishment.
>
> We have also held questions to be proper for the purpose of intelligently exercising premptory [sic] challenges. Reliance on this basis provides no meaningful limit on questions to be asked for the intelligent use of peremptory challenges. The more intelligent or effective the question, the more likely it is that the question will commit the

veniremember to decide the case, or to refrain from deciding the case, on a basis not required by law.

*Id.* (internal citations omitted)

## B.     Discussion

The record reflects that defense counsel asked panelists about their opinions regarding whether they thought innocent people sometimes are arrested. When defense counsel asked how that happens, one venire person responded, "It can be sometimes the wrong place, wrong time, sometimes overzealous." Thereafter, the State approached, and a bench conference was held off the record. No objection is shown in the record. Defense counsel then moved on to questions regarding the meaning of the reasonable-doubt standard in relation to the standards of proof required in civil cases.

In his bill of exceptions, defense counsel explained that he intended to ask why innocent people get arrested and convicted and how that happens. When pressed by the trial court to explain further, defense counsel focused on differentiating between the burdens applicable to arrest, indictment, and trial.

A general discussion of how different burdens might apply to arrest and indictment in a hypothetical case goes beyond the scope of a juror's duties. Furthermore, this discussion would provide no information relevant to a juror's qualifications, nor the exercise of peremptory strikes. *See Barajas*, 93 S.W.3d at 39. Accordingly, we cannot say that this line of questioning during voir dire was a proper area of inquiry; rather, the line of questioning was so broad as to constitute a global fishing expedition. *See id.* And as

such, we cannot conclude that the trial court abused its discretion by limiting this line of questioning during voir dire. *See Sells*, 121 S.W.3d at 755.

With regard to Valadez's second line of questioning, defense counsel attempted to explain the beyond-a-reasonable-doubt standard as follows:

| | |
|---|---|
| [Defense counsel]: | How about, Juror Number 6, if you got back there and said, "He probably did it, but I don't know"? How about you have to vote? |
| VENIREPERSON: | I'd vote not guilty. |
| [Defense counsel]: | Not guilty. Okay. Would everyone agree with me on that, that if you get back there and you can say, "He probably did it, but I don't know— " |

At this point, the State objected that this line of questioning was a misstatement of the law, and the trial court sustained the objection.

Not only is this line of questioning a misstatement of the beyond-a-reasonable-doubt standard, but it also asks for an improper commitment from the jury. *See Thompson v. State*, 95 S.W.3d 537, 541 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (noting that voir-dire questions or hypotheticals that misstate the law are improper); *see also Sells*, 121 S.W.3d at 755; *Barajas*, 93 S.W.3d at 38. Accordingly, we cannot conclude that the trial court abused its discretion by limiting this line of questioning during voir dire. *See Sells*, 121 S.W.3d at 755.

In any event, even if the trial court erred in limiting these lines of questioning during voir dire, we cannot conclude that Valadez was harmed. *See* TEX. R. APP. P.

44.2(b); *see also Garcia v. State*, Nos. 10-11-00266-CR & 10-11-00267-CR, 2012 Tex. App. LEXIS 9880, at **6-7 (Tex. App.—Waco Nov. 15, 2012, pet. ref'd) (stating that any error in the denial of appropriate questions during voir dire is subject to non-constitutional harm analysis under Texas Rule of Appellate Procedure 44.2(b)).

Under Rule 44.2(b) a reviewing court should disregard any "error, defect, irregularity, or variance that does not affect substantial rights" of the appellant. *See* TEX. R. APP. P. 44.2(b). A substantial right is affected "when the error has a substantial and injurious effect or influence in determining the jury's verdict." *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). In conducting the harm analysis, we consider everything in the record, including the testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Id.*

In the instant case, the evidence adduced at trial is sufficient to support Valadez's conviction. Additionally, the record reflects that defense counsel asked many other questions advancing his defensive theory and gauging the venire members' ability to consider the theory within the context of the governing standards of proof. Moreover, the State appropriately explained the beyond-a-reasonable-doubt standard, and the jury

charge contains a correct statement regarding the standard.[2] There is nothing in this record indicating that this purported error had a substantial and injurious effect or influence in determining the jury's verdict. *See Rich*, 160 S.W.3d at 577; *see also* TEX. R. APP. P. 44.2(b). We overrule Valadez's second and third issues.

### III.   VALADEZ'S RULE 404(B) OBJECTION

In issues four through twelve, Valadez complains that the trial court abused its discretion by admitting evidence of nine extraneous drug offenses over his objection under Texas Rule of Evidence 404(b). *See* TEX. R. EVID. 404(b). Valadez argues that the extraneous-offense evidence was inadmissible to prove intent, knowledge, or to rebut his innocent-passenger defense and that the admission of the evidence improperly portrayed him to the jury as a habitual marihuana possessor or cocaine dealer.

### A.   Applicable Law

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to admit or exclude evidence, we will

---

[2] In fact, the jury charge also contained the following language, which appears to emphasize defense counsel's concerns during voir dire: "The fact that he has been arrested, confined or indicted or otherwise charged with the offense gives rise to no inference of guilt at his trial."

not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Id.* at 391; *see Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. TEX. R. EVID. 404(b). It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* "The exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive." *De la Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). "'Rule 404(b) is a rule of inclusion rather than exclusion.'" *Id.* (quoting *United States v. Bowie*, 232 F.3d 923, 929, 344 U.S. App. D.C. 34 (D.C. Cir. 2000)). "The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* (citing *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996)).

Rebuttal of a defensive theory is one of the permissible purposes for which extraneous-offense evidence may be admitted. *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Further, extraneous offenses are admissible to rebut theories raised by the testimony of a defense witness during direct examination or a State's witness during cross-examination. *See Daggett v. State*, 187 S.W.3d 444, 453-54 (Tex. Crim. App. 2005); *Ransom v. State*, 920 S.W.2d 288, 301 (Tex. Crim. App. 1996).

To be admissible for rebuttal of a defensive theory, "'the extraneous misconduct must be at least similar to the charged one.'" *Newton v. State*, 301 S.W.3d 315, 317 (Tex. App.—Waco 2009, pet. ref'd) (op. on remand) (quoting *Wheeler v. State*, 67 S.W.3d 879, 887 n.22 (Tex. Crim. App. 2002)). The requisite degree of similarity is not exacting, and the extraneous conduct need only be sufficiently similar to the charged offense. *Dennis v. State*, 178 S.W.3d 172, 178 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *see Newton*, 301 S.W.3d at 317.

## B.      Discussion

During voir dire, opening statement, and cross-examination of the State's witnesses, Valadez repeatedly advanced his defensive theory that he was an innocent passenger in the vehicle. In particular, Valadez contended that he had no knowledge or intent to exercise care, custody, control, or management over the marihuana found inside the vehicle. This was enough to open the door to the admission of extraneous-offense evidence to rebut Valadez's defensive theory that he was an innocent passenger in the vehicle and that he did not possess the requisite knowledge or intent to possess the marihuana in this case. *See* TEX. R. EVID. 404(b); *see also Daggett*, 187 S.W.3d at 453-54; *Moses*, 105 S.W.3d at 626; *Ransom*, 920 S.W.2d at 301.

And to the extent that Valadez asserts that the extraneous offenses were not sufficiently similar to the charged offense, we note that complained-of extraneous-offense evidence pertained to nine prior instances of drug possession, including eight instances

of marihuana possession and one instance of cocaine possession. As noted above, the requisite degree of similarity is not exacting; thus, we conclude that the nine prior instances of drug possession are sufficiently similar to the charged offense in this case—possession of marihuana. *See Dennis*, 178 S.W.3d at 178; *Newton*, 301 S.W.3d at 317; *see also Johnson v. State*, No. 10-06-00078-CR, 2007 Tex. App. LEXIS 2001, at *13 (Tex. App.—Waco Mar. 14, 2007, pet. ref'd) (mem. op., not designated for publication) (concluding that evidence the defendant possessed crack cocaine earlier in the evening was circumstantial evidence that he intentionally or knowingly possessed at least one bag of crack cocaine found in the car later in the evening and, thus, was admissible to rebut the defensive theory that the defendant did not have the requisite knowledge or intent).

Viewing defense counsel's voir dire, opening statement, and cross-examination of the State's witnesses in the proper context, and keeping in mind that a trial court's ruling on the admissibility of extraneous-offense evidence is reviewed for an abuse of discretion, we cannot conclude that the trial court's ruling falls outside the "zone of reasonable disagreement." *Montgomery*, 810 S.W.2d at 380; *see Dabney v. State*, 492 S.W.3d 309, 317-18 (Tex. Crim. App. 2016); *see also De La Paz*, 279 S.W.3d at 347-348 (noting that the "doctrine of chances" tells us that highly unusual events are unlikely to repeat themselves inadvertently or by happenstance and concluding that extraneous-offense evidence of

other drug deals was admissible to rebut the defendant's assertion of innocent intent).[3]

Accordingly, we hold that the trial court did not abuse its discretion by denying Valadez's Rule 404(b) objections to the nine extraneous drug offenses introduced by the State. *See Martinez*, 327 S.W.3d at 736; *Manning*, 114 S.W.3d at 926; *see also Montgomery*, 810 S.W.2d at 380, 391. We overrule issues four through twelve.

## IV. VALADEZ'S RULE 403 OBJECTION

In issues thirteen through twenty-one, Valadez asserts that the trial court abused its discretion by admitting evidence of the nine extraneous drug offenses over his objection under Texas Rule of Evidence 403. *See* TEX. R. EVID. 403. Specifically, Valadez contends that the probative value of the extraneous-offense evidence was substantially outweighed by the danger of unfair prejudice to him in the trial of the charged offense. We disagree.

## A. Applicable Law

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Allen v. State*, 108 S.W.3d 281, 284 (Tex.

---

[3] "As Auric Goldfinger, the infamous James Bond villain, said, 'Once is happenstance. Twice is coincidence. The third time it's enemy action.'" *De La Paz v. State*, 279 S.W.3d 336, 348 (Tex. Crim. App. 2009) (citing Edward J. Imwinkelried, *An Evidentiary Paradox: Defending the Character Evidence Prohibition by Upholding a Non-character Theory of Logical Relevance, the Doctrine of Chances*, 40 U. RICH. L. REV. 419 (2006) (quoting IAN FLEMING, GOLDFINGER (Berkley Publ'g Group 1982) (1959))).

Crim. App. 2003); *Jones v. State*, 944 S.W.2d 642, 652-53 (Tex. Crim. App. 1996). When considering a Rule 403 objection, the trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

The trial court had broad discretion in conducting a Rule 403 balancing test, and we will not lightly disturb its decision. *Allen*, 108 S.W.3d at 284. All testimony and physical evidence will likely be prejudicial to one party or the other. *Jones*, 944 S.W.2d at 653. It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value that the evidence is considered unfairly prejudicial and in violation of Rule 403. *Id.; see Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh'g).

## B. Discussion

As stated earlier, Valadez's defense was that he was an innocent passenger in the vehicle. As such, intent, knowledge, and possession were clearly at issue in this case.

The State had a need for the complained-of extraneous drug-offense evidence because it was probative on the issues of Valadez's intent, knowledge, and possession of the marihuana in this case. Indeed, this evidence was used to rebut Valadez's innocent-passenger defense. Furthermore, the record does not reflect that the State spent an inordinate amount of time developing the complained-of extraneous drug-offense evidence. This evidence was presented through the brief testimony of two witnesses, McLennan County Sheriff's Department Captain Steve January and Austin Police Department Detective Christopher Thomas. In addition, we do not believe that the complained-of evidence caused the jury to be confused or distracted or caused the jury to give the evidence undue weight, especially because other evidence adduced at trial affirmatively linked Valadez to the marihuana, and because Captain January and Detective Thomas also testified about other extraneous drug offenses that Valadez was involved in without objection. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."); *see also Washington v. State*, 485 S.W.3d 633, 638-39 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (noting error in admission of evidence may be rendered harmless when substantially similar evidence is admitted elsewhere without objection).

Rule 403 "envisions exclusion of [relevant] evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative

value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). We cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by the complained-of evidence and its probative value. *See id.*; *see also Conner*, 67 S.W.3d at 202. Thus, we cannot conclude that the trial court abused its discretion by admitting the complained-of evidence over Valadez's Rule 403 objection. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641-42; *Allen*, 108 S.W.3d at 284; *Jones*, 944 S.W.2d at 653; *Montgomery*, 810 S.W.2d at 389. We overrule issues thirteen through twenty-one.

## V. VALADEZ'S CONFRONTATION CLAUSE OBJECTIONS

In issues twenty-two through twenty-seven, Valadez argues that the trial court abused its discretion by admitting six extraneous drug offenses over his right-of-confrontation objection. Valadez noted that Detective Thomas was improperly permitted to testify about records maintained by the Austin Police Department concerning six extraneous offenses for which he had no personal knowledge, including their status or disposition.

### A. Applicable Law

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. This procedural guarantee applies to both federal and state prosecutions. *Pointer v. Texas*, 380

U.S. 400, 403, 85 S. Ct. 1065, 1067-68, 13 L. Ed. 2d 923 (1965); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). Consistent with the Confrontation-Clause guarantee, a testimonial-hearsay statement may be admitted in evidence against a defendant "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1373-74, 158 L. Ed. 2d 177 (2004); *see De La Paz*, 273 S.W.3d at 680. "[T]he *Crawford* rule reflects the Framers' preferred mechanism (cross-examination) for ensuring that inaccurate out-of-court testimonial statements are not used to convict an accused." *Whorton v. Bockting*, 549 U.S. 406, 418, 127 S. Ct. 1173, 1182, 167 L. Ed. 2d 1 (2007); *De La Paz*, 273 S.W.3d at 680.

Essentially, the threshold question for possible Confrontation-Clause violations is whether a statement is testimonial or non-testimonial. *See Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374. Whether a statement is testimonial or non-testimonial hinges on the primary purpose of the interrogation. *Michigan v. Bryant*, 131 S. Ct. 1143, 1156, 179 L. Ed. 2d 93 (2011). This is a relative inquiry that depends on the circumstances surrounding the statements. *Id.* "Generally speaking, a hearsay statement is 'testimonial' when the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *De La Paz*, 273 S.W.3d at 680. However, when the primary purpose is something other than criminal investigation, "the Confrontation Clause does not require

such statements to be subject to the crucible of cross-examination." *Id.* at 1157. Whether a statement is testimonial is a question of law. *De La Paz*, 273 S.W.3d at 680; *see Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). Moreover, we review de novo the trial court's ruling admitting evidence over a confrontation objection. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

## B.    Discussion

During his testimony, Detective Thomas testified about six cases involving marihuana that Valadez has had with the Austin Police Department. Detective Thomas's testimony about the Austin Police Department records was the subject of an objection under the Confrontation Clause made by Valadez. These records included the following information:

- 10-501-8928: Knock and announce—"encountered Valadez first, narcotics seized were 7.6 ounces of marijuana, 65 grams of cocaine, six grams of methamphetamine, scales, baggies, and smoking device."

- 09-2750971: Traffic stop—"No seat belt, 2.3 ounces of marijuana in Mr. Valadez'[s] left front pocket.

- 09-122-0720: Call for service—Outstanding family violence warrant, Valadez resisted arrest. Marijuana in plain view in room where Valadez was arrested. Marijuana totaled 1.2 ounces.

- 07-2601155. "Traffic stop, amplified music, marijuana joint thrown into cup of soda in it, and marijuana found in baggy. Only one Class B filed, unknown how many ounces."

- 06-410202. "Sitting in St. David's parking garage. Smelled strong odor of marijuana and observed Valadez smoking a marijuana joint outside of his vehicle. Plain view baggy of marijuana on floorboard of car equals 4.3 grams."

- 04-28550136. "Traffic stop on no license plate light. Valadez was no [sic] subject with marijuana for this case."

These records are not comprehensive of the facts involved in these cases. Moreover, these records are not case reports, synopses of case reports, or prepared for the purpose of prosecutorial use. *See Grey v. State*, 299 S.W.3d 902, 909 (Tex. App.—Austin 2009, pet. ref'd) ("[I]t is the intended or anticipated use of a statement that determines whether the statement is testimonial." (citing *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006)); *see also Sessums v. State*, No. 06-14-00017-CR, 2014 Tex. App. LEXIS 11739, at **19-20 (Tex. App.—Tyler Oct. 24, 2014, pet. ref'd) (mem. op., not designated for publication) (concluding that a pen pack prepared by an unnamed department of corrections employee documenting the defendant's criminal history, including fifteen to nineteen prior arrests, adjudications, convictions, and probation revocations, was not prepared for prosecutorial use, was not testimonial, and did not violate the defendant's right of confrontation). Rather, this information is informal in nature and is a part of the record keeping of the Austin Police Department. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009) (stating that business and public records are generally admissible without confrontation "because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial"); *see also Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013) ("While the exact contours

of what is testimonial continue to be defined by the courts, such statements are formal and similar to trial testimony. In other words, testimonial statements are those that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." (internal quotations & citations omitted)).

The records complained about in this issue resemble the pen packet created by an unnamed department of corrections employee in *Sessums*. Therefore, like *Grey* and *Sessums*, we conclude that the complained-of records in this case were not clearly prepared for prosecutorial use, were not testimonial, and did not violate Valadez's right of confrontation. *See Grey*, 299 S.W.3d at 909; *see also Sessums*, 2014 Tex. App. LEXIS 11739, at **19-20. Accordingly, we cannot conclude that the trial court erred by denying Valadez's objection under the Confrontation Clause.[4] *See Wall*, 184 S.W.3d at 742. We overrule issues twenty-two through twenty-seven.

## VI. CONCLUSION

Having overruled all of Valadez's issues on appeal, we affirm the judgment of the trial court.

---

[4] We also note that these records were cumulative of other evidence showing Valadez's prior involvement with marihuana. Captain January testified about one of Valadez's prior marihuana convictions, and Detective Thomas testified as an eyewitness to a traffic stop where Valadez was caught with marihuana and a distribution amount of cocaine.

JOHN E. NEILL
Justice

Before Chief Justice Gray,
       Justice Davis, and
       Justice Neill
       (Chief Justice Gray concurring with a note)*
Affirmed
Opinion delivered and filed May 15, 2019
Do not publish
[CR25]

*(Chief Justice Gray concurs in the Court's judgment. A separate opinion will not issue.)

